## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| D.C. CHEMICAL CO. LTD. and | § | |
| TAUBER OIL COMPANY, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0374 |
| | § | |
| M/T ST. PETRI, *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment ("Motion")

[Doc. # 23] filed by Defendant Rudolf A. Oetker ("RAO").  Plaintiffs neither filed a

response in opposition to RAO's Motion nor requested additional time to do so.[1]

Having reviewed the full record, including the uncontroverted evidence, and having

applied governing legal authorities, the Court **grants** RAO's Motion for Summary

Judgment.

---

[1]    Pursuant to the Local Rules of the United States District Court for the Southern District of Texas, failure to respond to a motion is taken as a representation of no opposition.  S.D. TEX. R. 7.3, 7.4.  When a plaintiff fails to respond to a motion for summary judgment, the Court must nevertheless consider the merits of the motion. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022–23 (5th Cir. 1995).

## I.    <u>BACKGROUND</u>

Plaintiffs D.C. Chemical Co., Ltd. ("DCC") and Tauber Oil Company

("Tauber") were the owners of carbon black oil cargo that was carried aboard the M/T

ST. PETRI, a general cargo vessel owned by Defendant Manson Shipholding S.A.

("Manson") and managed by Defendant Chemikalien Seetransport GmbH ("CST").

DCC arranged for the Houston Fuel Oil Terminal Company ("HFOT") to provide

terminaling and storage of the cargo at its terminal in Channelview, Texas, awaiting

loading of the cargo onto the M/T ST. PETRI.  In January 2007, Tauber voyage

chartered the M/T ST. PETRI  from time charterer RAO for the ocean carriage of the

cargo from Texas to Korea.[2]

Tauber's relationship with RAO is governed by a contract of carriage,

specifically, the ASBATANKVOY Tanker Voyage Charter Party, which details the

respective rights and obligations of the parties.[3]  The contract terms provide that "[t]he

---

[2]     At all times relevant to this controversy, the M/T ST. PETRI was time chartered to
        RAO per a "Shelltime 3" Time Charter Party.  *See* Time Charter Party, Exh. 1 to
        RAO's Motion. [Doc. # 23].  The M/T ST. PETRI  was originally chartered to RAO
        in October 1997 by its previous owners, Maruta Industries, Co., Ltd.  *Id*. at 1.  The
        time charter party period was subsequently extended by its current owners, Manson,
        in April 2004 through and including the time of the incident at issue in this matter.
        *See* Addendum to Original Time Charter Party, Exh. 3 to RAO's Motion [Doc. # 23],
        at 1.

[3]     *See* ASBATANKVOY Tanker Voyage Charter Party, Exh. 2 to RAO's Motion.
        [Doc. # 23].

cargo shall be pumped into the Vessel at the expense, risk, and peril of the Charterer [Tauber]. . . ."[4]  The charter further provides that the vessel shall "strip dry all cargo line, pumps and cargo tanks to Charterer's inspector's satisfaction."[5]

On or about February 2–3, 2007, approximately 10,500 metric tons of carbon black oil ("cargo") sold by Tauber to DCC was loaded aboard the M/T ST. PETRI  at HFOT's terminal in Channelview, Texas, for carriage to Seoul, Korea.  Tauber's inspectors tested the cargo before it was loaded onto M/T ST. PETRI and found the cargo to be in good condition.  Onboard testing revealed, however, that the cargo was contaminated, diminishing the value of the cargo.

On February 1, 2008, Plaintiffs filed this lawsuit asserting unseaworthiness, negligence, and breach of contract of carriage claims against Defendant.  After an ample time for discovery, RAO filed its Motion for Summary Judgment.  The motion has been fully briefed and is ripe for decision.

## II.    <u>STANDARD FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the

---

[4]      *Id*. at Part II, Cl. 10 (emphasis added).

[5]      *Id*. at Attachment, ¶ 5 (emphasis added).

party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). Although the facts are to be reviewed in the light most favorable to the nonmoving party, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56

does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.   ANALYSIS

### A.   Lack of Operational Control Over the Vessel or the Crew

Plaintiffs' Complaint alleges that damage to the cargo resulted from the breach and violation of the contract of storage and carriage of the cargo.[6] RAO argues that as time charterer it had no operational control over the vessel and crew and therefore cannot be found liable for the damage to the cargo.

A time charterer enjoys use of the vessel for a given time span. During that time, the vessel's owner retains primary possession and control of the vessel. *See Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993); *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993) ("In a time charter, the vessel owner retains possession and control of the vessel, provides whatever crew is needed. . . fully equips and maintains the vessel . . ."); *Kerr-McGee Corp. v. Ma-Ju Marine Services, Inc.*, 830 F.2d 1332, 1340–1341 (5th Cir. 1987) (same); *Viser v. Trinity Catering, Inc.*, 2007 WL 4206879, at \*4–\*5 (E.D. La. Nov. 21, 2007) (same). Although a time charterer selects destinations the vessel will travel, the time charterer has no control

---

[6]     *See* Plaintiffs' Complaint [Doc. # 1], ¶ 15–16.

over the details of vessel operations. *Forrester*, 11 F.3d at 1215; *Walker v. Braus*, 995 F.2d at 81; *Viser*, 2007 WL 4206879 at \*4–\*5.

Because a time charterer has no "operational control" over the vessel, it assumes no liability for damage to cargo due to crew negligence or vessel unseaworthiness unless the plaintiff can demonstrate that the parties to the charter intended otherwise. *See Williams v. Cent. Gulf Lines*, 874 F.2d 1058, 1062 (5th Cir. 1989); *see also Mallard v. Alum. Co. of Can., Inc*., 634 F.2d 236, 242 & n.5 (5th Cir. 1981); *Kerr McGee Corp*., 830 F.2d at 1341 ("Under a time charter, the owner bears continuing responsibility for the seaworthiness of the vessel."); *Wright v. P.J. St. Pierre Marine, Inc*., 1989 WL 211485, at \*21–\*22 (S.D. Tex. Nov. 17, 1989) ("A time charterer does not have operational control over the loading, stowing, and trimming of the cargo. . . [and] assumes no liability flowing from the unseaworthiness of a vessel."). Clear, express language is required to rebut the presumption that the charter parties did not intend to shift the responsibilities to the charterer. *Kerr-McGee Corp*., 830 F.2d at 1343; *Viser*, 2007 WL 4206879 at \*4; *see also Wright*, 1989 WL 211485 at \*21 ("Absent any specific contractual duty otherwise, the duty to load, stow, and discharge cargo and the consequences for failing to do so properly fall upon the ship and her owners.")

RAO has presented evidence that suggests it acted only as time charterer of the M/T ST. PETRI and was not involved in any way in vessel operations.  RAO has established without contradiction that it had no personnel crewing the vessel and, at all times relevant to the claim, that the vessel was operated and maintained by Manson, the vessel owner.  Furthermore, examination of the time charter between RAO and Manson reveals no contractual provisions that shift responsibility for care of cargo, pipe, tank maintenance, or control for cargo operations from owner Manson to RAO.  Plaintiffs have pointed to no contractual language that rebuts the presumption that the standard relationship exists.  There is no proof the charter parties shifted to RAO, the time charterer, liability for cargo damage due to crew negligence or vessel unseaworthiness.  *See Kerr-McGee Corp.*, 830 F.2d at 1343.  Specifically, according to the charter agreement, Manson, not RAO, was responsible for proper stowage of the cargo, as well as "for any ordinary and commonly practised cleaning of the vessel's cargo tank and lines."[7]  Because RAO did not assume contractual liability for damage to the cargo from crew negligence or vessel unseaworthiness, RAO cannot be held liable for damage from such circumstances.  Plaintiffs have shown no genuine fact issue that RAO is responsible for crew negligence or vessel

---

[7]      *See* Time Charter Party, Exh. 1 to RAO's Motion [Doc. # 23] at Cl. 13 & 63.

unseaworthiness, if any, that caused contamination of the cargo. Accordingly, RAO

is entitled to summary judgment on Plaintiffs' breach of contract claims.

### B.    RAO's Independent Negligence

As the basis for their negligence and unseaworthiness claims in this case,

Plaintiffs allege that the damages to their cargo were caused solely to the fault and

negligence of Defendants and/or the unseaworthiness of the vessel.[8] However, RAO

contends it was not negligent in the exercise of its traditional duties as time charterer

or its contractual duties under the contract of carriage.

For RAO to be held liable, Plaintiffs must show that RAO was negligent in

conducting its activities as time charterer and that such negligence caused the alleged

damage to the cargo. *In re P & E Boat Rentals, Inc*., 872 F.2d 642, 647 (5th Cir.

1989) ("[T]his general rule does not exempt a time charterer from liability if it is

negligent in conducting its activities as time charterer."); *Graham v. Milky Way Barge,*

*Inc*., 811 F.2d 881 (5th Cir. 1987) (holding time charterer liable for its independent

negligence); *Viser*, 2007 WL 4206879 at *6–*7 (same); *In re Cent. Gulf Lines, Inc*.,

176 F. Supp. 2d 599, 622 (E.D. La. 2001) (stating that the time charterer could not be

held liable unless shown to have negligently caused the collision). If there is no

evidence that RAO negligently caused the damage in the exercise of its time charterer

---

[8]    *See* Complaint, ¶ 14.

duties—that is, if there is no evidence that RAO was independently negligent—it cannot be held liable in this case for independent negligence. *See In re Cent. Gulf Lines*, 176 F. Supp. 2d at 622–23.

A time charterer owes "a hybrid duty arising from contract and tort . . . to avoid negligent actions within the sphere of activity over which it exercises at least partial control." *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1520 (5th Cir. 1996). The "spheres of activity" over which a time charterer has control "include choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment." *Id.*; *In re Cent. Gulf Lines*, 176 F. Supp. 2d at 625. Unless responsibility has been contractually modified, a time charterer owes no duty beyond those areas. *Hogden*, 87 F.3d at 1512. Nevertheless, a time charterer may be held independently liable for negligently choosing to stow an unsafe combination of cargo in one hold, or for ordering a vessel out in dangerous weather conditions. *In re Cent. Gulf Lines*, 176 F. Supp. 2d at 625; *see Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1041–42 (5th Cir. 1983). But even in these situations, the vessel owner remains responsible for vessel unseaworthiness and crew negligence. *In re Cent. Gulf Lines*, 176 F. Supp. 2d at 625 (citing *Delta Transload, Inc. v. MV NAVIOS COMMANDER*, 818 F.2d 445, 450 (5th Cir. 1986)).

RAO, accordingly, cannot be held liable for crew negligence or vessel unseaworthiness unless Plaintiffs' theory of negligence or unseaworthiness falls within the traditional "spheres of activity" of a time charterer. Plaintiffs have presented no evidence that the cargo was contaminated due to RAO's choosing of "the vessel's cargo, route, [] general mission, . . . [or] the specific time in which the vessel will perform its assignment," *Hogden*, 87 F.3d at 1520, or the decision to combine cargo in one hold, or the like, *In re Cent. Gulf Lines*, 176 F. Supp. 2d at 625. As discussed previously, crew negligence and unseaworthiness have been specifically identified as within the traditional sphere of the owner's control, unless the responsibility has been contractually modified. *Hogden*, 87 F.3d at 1512. Based on the contract of carriage between RAO and Tauber detailing the respective rights and obligations of the parties, there is no modification transferring liability for negligence or unseaworthiness from Tauber to RAO.[9] To the contrary, the contract terms specifically provide that "[t]he cargo shall be pumped into the Vessel at the expense, risk, and peril of  [Tauber]. . .."[10] Plaintiffs have presented no evidence to the contrary.

---

[9]     *See generally* ASBATANKVOY Tanker Voyage Charter Party, Exh. 2 to RAO's Motion [Doc. # 23].

[10]     *Id*. at Part II, Cl. 10.

In addition, the charter requires the vessel owner "to strip dry all cargo lines, pumps, and cargo tanks to [Tauber's] inspectors satisfaction."[11]  Plaintiffs present no evidence to contradict RAO's proof that, in accordance with the agreement, Plaintiffs' surveyor certified that the tanks were "apparently suitable" and free of liquid.[12]  The Certificate of Pre-Inspection specifically states "[a]ll nominated cargo tanks were sounded . . . and a total of 00.00 barrels of OBQ's[13] were found to be present."  *Id*. It further states, "[t]he cargo tanks were reported last demucked in December 2, 2006" and that "all the cargo tanks, lines and pump were stripped well at the last discharge port."  *Id*.  Therefore, Plaintiffs have failed to provide evidence to establish RAO was negligent in any way in conducting its duties within the traditional "spheres of activity" of a time charterer.  Plaintiffs, accordingly have failed to raise a genuine fact issue that RAO is liable for negligence or unseaworthiness resulting in contamination of the cargo.  RAO is entitled to summary judgment on Plaintiffs' negligence claims based on RAO's independent negligence.

---

[11]     *Id*. at Attachment, ¶ 5.

[12]     *See* Certificate of Pre-Inspection, Exh. 4 to RAO's Motion [Doc. # 23].

[13]     OBQ is an acronym for "On Board Quantity" and is used to refer to any residual liquid product in cargo tanks.  *Underwriters at Lloyds v. Seariver Maritime, Inc.*, 2000 WL 33302237, at *2 (S.D. Tex. Sept. 1, 2000).

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Plaintiffs have failed to present evidence to raise a genuine issue of material fact in support of prima facie cases of breach of contract and negligence against RAO.  Accordingly, it is hereby

**ORDERED** that RAO's Motion for Summary Judgment [Doc. # 23] is **GRANTED**, and Plaintiff's claims against RAO are **DISMISSED with prejudice**.

SIGNED at Houston, Texas, this **24th** day of **July, 2009**.

Nancy F. Atlas
United States District Judge